UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FREDDIE C. BATCHELOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08 C 1658 |
| | ) | |
| UNITED STATES DEP'T OF HOUSING & | ) | |
| URBAN DEVELOPMENT SECRETARY, | ) | Judge Kennelly |
| ALFONZO JACKSON, | ) | |
| | ) | |
| Defendant. | ) | |

### **DEFENDANT'S LOCAL RULE 56.1 STATEMENT OF UNCONTESTED FACTS**

Defendant Alfonzo Jackson, Secretary of the Department of Housing and Urban Development, by Patrick J. Fitzgerald, United States Attorney for the Northern District of Illinois, submits the following statement of material facts as to which defendant contends there is no genuine issue and entitles it to judgment as a matter of law pursuant to Local Rule 56.1 of the United States District Court for the Northern District of Illinois.

1. Freddie C. Batchelor contacted HUD's EEO office in 2004 regarding her claims that Gustin and Pollack discriminated against her, and, after completing its investigation, HUD's EEO office issued a final agency decision on Batchelor's claims in January 2006. Exhibit A

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

By:  s/ Gina E. Brock
    GINA E. BROCK
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 353-7919
    gina.brock@usdoj.gov

# Exhibit A



U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
WASHINGTON, DC 20410-0001

Office of Departmental
Equal Employment Opportunity

JAN 9 2006

**PRIORITY MAIL**
**SIGNATURE CONFIRMATION NUMBER:** 2304 1070 0000 9824 9391

Ms. Freddie Batchelor
9615 South Kedzie
Evergreen Park, IL 60805

SUBJECT: Final Decision – Freddie Batchelor v. Alphonso R. Jackson, Secretary,
U.S. Department of Housing and Urban Development
Case Number CH 04 12 M

Dear Ms. Batchelor:

After careful review and analysis of your Equal Employment Opportunity (EEO) complaint and the Report of Investigation, and following consultation with the Offices of General Counsel and Human Resources, the U.S. Department of Housing and Urban Development is taking final action on your complaint by issuing this Final Decision. The Decision finds that you were not subjected to unlawful employment discrimination, as alleged.

### Statement of Claims

You claim that because of your race (Black), sex (female), religion (Christian), disability (chronic asthma and anxiety), and in reprisal for prior EEO activity, you have been subjected to harassment and disparate treatment by Gregory Gustin, Supervisory Attorney-Advisor and Acting Director, Office of General Counsel, Chicago, IL, and James Pollock, Supervisory Enforcement Analyst (Team Leader), when: (1) on March 8, 2004, you were instructed to submit a leave slip for time taken to address a family emergency phone call; (2) on March 16, 2004, you were placed on leave restriction, placed on absent without leave (AWOL) and were questioned about other time and attendance matters; (3) you were overly supervised, i.e., being followed to the bathroom, stood over for no apparent reason while you were at your desk, questioned on February 20, 2004, regarding your role to mediate for another agency under the Shared Neutrals Program (SNAP); (4) you were not given immediate medical attention on March 16, 2004, when you were allowed to stay collapsed on the floor for approximately 45 minutes before paramedics were called; (5) your laptop computer was taken away from you and you were denied access to the computer system; (6) you were not allowed to work at home and were denied leave without pay as reasonable accommodation; (7) you were forced to retire (constructive discharge) effective May 1, 2004, because of harassment; and (8) you were locked out of the HUD building on March 8, 2005.

## Procedural History

You contacted the EEO Counselor about your concerns, and the initial interview was conducted on March 10, 2004. *(ROI Exhibit 2)* Attempts to resolve your concerns during the pre-complaint process were unsuccessful, and the EEO Counselor issued a Notice of Right to File a Discrimination Complaint on April 8, 2004. You did not file your formal complaint, which you signed on May 8, 2004, until May 14, 2004, more than fifteen (15) days after your receipt of the Notice. You explained that the delay was caused by your illness and your husband's illness and subsequent death; therefore, the Department extended the 15-day limit for filing a complaint, pursuant to EEO Regulations at 29 CFR § 1614.604(c). You filed an amendment to your complaint on February 23, 2005. Your complaint was investigated from August 9 through September 27, 2004, and a supplemental investigation was conducted from March 3 to March 23, 2005. The Report of Investigation (ROI) was mailed to you on May 23, 2005, with the notice that because this matter is considered a "mixed case complaint," a Final Decision would be issued on the merits of your complaint within forty-five (45) days without the right to a hearing before the Equal Employment Opportunity Commission. Therefore, pursuant to 29 CFR § 1614.302(d)(2), this Final Decision is being rendered.

## Statement of Facts

At all times relevant in this complaint, you served in the position of GS-1101-13, Enforcement Analyst, Departmental Enforcement Center, Office of General Counsel, Chicago, Illinois, until your retirement on May 1, 2004. *(ROI Exhibit 8)*

You identified Gregory Gustin, GS-0911-15, (White, male, Methodist, no disability, no prior EEO activity), Supervisory Attorney-Advisor and Acting Satellite Office Director, Office of General Counsel, Chicago Satellite Office, Chicago, Illinois, and your first line supervisor at the time of the instant complaint, as one of the management officials responsible for certain employment decisions about which you complain. You also named Mr. James Pollock (White, male, no religious affiliation, no prior EEO activity), GS-1101-14, Supervisory Enforcement Analyst (Team Leader), Chicago Satellite Office, Chicago, Illinois, and your first line supervisor when he was acting for Mr. Gustin, as a management official responsible for certain employment decisions about which you complain. *(ROI Exhibit 8)*

Mr. Gustin testified that he was your first line supervisor when he was Acting Satellite Office Director, and also worked with you as a member of the staff to which he provided legal advice. He stated that he was aware of your race, sex, and religion, and he became aware of your prior EEO activity on March 19, 2004. However, he stated that he was not aware that you had a disability, and he did not regard you as having a disability. Mr. Gustin testified that he did not discriminate against you because of your race, sex, religion, disability, or in reprisal for your prior EEO activity. *(ROI Exhibit 9)*

Mr. Pollock stated that he supervised you during Mr. Gustin's absence from the office from the first week of March 2004 through the last week of March 2004. He stated that he was aware of your race, sex, and religion, and he became aware of your prior EEO activity on

2

March 19, 2004. However, he said that he was not aware that you had a disability, and he did not regard you as having a disability. He also testified that he did not discriminate against you because of your race, sex, religion, disability, or in reprisal for your prior EEO activity. *(ROI Exhibit 10)*

**Being instructed to submit a leave slip for time taken to address a family emergency phone call on March 8, 2004**

You maintain that you were required to provide a leave slip on March 8, 2004, when you used the telephone to address a family emergency. You further maintain that you were not told why you had to submit the leave slip. *(ROI Exhibit 8)*

Mr. Pollock testified that on March 8, 2004, he observed you in the conference room with your checkbook open on the table in front of you. He stated that you stayed there for about 45 minutes. *(ROI Exhibits 10 and 34)* He stated that you never told him that you were going to be away from your assigned work area or that you had to tend to an emergency personal matter. He also maintained that you had been counseled previously about spending inordinate amounts of time on non-HUD business. He said that it was in light of these facts that he asked for the leave slip. Mr. Pollock stated that he asked for the leave slip, as he was acting for Mr. Gustin, who was absent on medical leave. He said that you have a history of spending inordinate amounts of time on personal business and away from your cubicle without coordinating with your supervisor, and that he gave you an opportunity to submit an explanation for your absence or a leave slip for the 45 minutes that you were away from your office, but you did neither. Consequently, you were charged with AWOL. *(ROI Exhibits 10 and 34)*

Ms. Janice Gipson (Black, female, Jehovah Witness, no disability, no prior EEO activity), GS-0303-07, Enforcement Assistant, Enforcement Center, Office of General Counsel, Chicago, Illinois, and your timekeeper at the time of the instant complaint, stated that you did not always provide leave slips, and that they had to be requested from you. She stated that leave slips had to be turned in on Monday mornings, but you were not always in on Monday mornings. She added, however, that Black females had to provide leave slips if they were late, but Whites or males did not. She further stated she brought this to Mr. Pollock's attention, and he said he was not aware of it, but after she made him aware of it, there was no longer a problem. *(ROI Exhibit 17)*

No other witness had relevant first-hand knowledge of this allegation.

**Being placed on leave restriction March 16, 2004, placed on absent without leave, and being questioned about other time and attendance matters**

You allege that on March 16, 2004, Mr. Pollock placed you on leave restriction. *(ROI Exhibits 8 and 35)*

Mr. Gustin testified that he had written the Leave Restriction Letter *(ROI Exhibit 35)*, and Mr. Pollock issued it, while he (Mr. Gustin) was out on medical leave. He further stated that he had counseled you on numerous occasions about your time and attendance, but to no avail.

3

*(ROI Exhibits 1, p 12; 4, pp 7, 8, 21; 9; 29; and 34)* Therefore, he prepared the letter of leave restriction to address your abuse of time and attendance. *(ROI Exhibit 9)*

Mr. Pollock testified that he also counseled you about your attendance on several occasions. He said that the leave restriction was issued because of your many absences and requests for leave. *(ROI Exhibit 35)* He testified that you were absent every day from March 8, 2004, to and including March 16, 2004, the date of the issuance of the letter of leave restriction. *(ROI Exhibit 10)*

You have stated, in rebuttal to Mr. Pollock's statement, that you were not counseled concerning leave restriction. *(ROI Exhibit 11)* You also alleged that Cheryl Martins (no data provided), and Sandra Suiter (White, female, Christian, no disability, no prior EEO activity), GS-1101-13, Enforcement Analyst, Enforcement Center, Office of General Counsel, Chicago, Illinois, had attendance problems but were not put on leave restriction. Ms. Suiter stated that she never had leave problems at HUD, and maintained that all of her absences were approved.[1] *(ROI Exhibit 15)*

With respect to your being placed on absent without leave (AWOL), Mr. Pollock maintained that on March 8, 2004, you were away from your cubicle for 45 minutes on a personal telephone call. He said that he asked you for a leave slip or an explanation to cover the time you were absent, but you failed to provide either. Consequently, he placed you on AWOL. *(ROI Exhibit 10)*

**Being overly supervised, i.e., being followed to the bathroom, stood over for no apparent reason while you are at your desk, questioned on February 20, 2004, regarding your role to mediate for another agency under the Shared Neutrals Program (SNAP)**

In this allegation, you maintain that you were closely supervised to include being followed to the bathroom and having your supervisor standing over your desk. You also claim that on February 20, 2004, you were questioned about your participation in the SNAP. *(ROI Exhibit 8)* Ms. Gipson also maintained that Mr. Pollock checked on her, and he did the same to you. *(ROI Exhibit 17)*

Mr. Gustin denied ever standing over you while you were working. He also denied having anyone follow you to the bathroom. He stated that he would stand outside of your cubicle until you looked up if he needed to speak to you while you were on the telephone. He said that he questioned you about your participation in the SNAP program because you scheduled mediation without prior coordination with him. He also stated that he received a call regarding your not responding to an attorney involved in a specific mediation that you had scheduled. *(ROI Exhibit 9)*

Mr. Pollock denied following you to the bathroom or having you followed to the bathroom. He denies standing over you, but he said that on one occasion he stood at the door to

---

[1] Cheryl Martin was not interviewed during the investigation of this complaint

your cubicle for about 1 minute, until he could signal you, while you were on the telephone. He said that he needed you to report to the office. He testified that he had no involvement in the SNAP matter about which you complain. *(ROI Exhibit 10)*

In rebuttal, you state Mr. Pollock stood at your door for 30 minutes. *(ROI Exhibit 11)*

**Failure to secure you with immediate medical attention on March 16, 2004, when you were allowed to stay collapsed on the floor for approximately 45 minutes before paramedics were called**

You testified that on March 16, 2004, Mr. Pollock asked you to come to his office to receive a Letter of Leave restriction. You went to his office and requested a union representative, which was denied. Thereafter, you began to cough, wheeze, and have difficulty breathing. You eventually fell to the floor. *(ROI Exhibits 8, 9, 10, 14, and 18)* This incident occurred while Mr. Gustin was on medical leave. Mr. Pollock denies that management failed to secure immediate medical attention for you. He said that it took about 10 minutes for the nurse to arrive on the scene. He stated that you left the office with paramedics about 20 minutes after falling to the floor. *(ROI Exhibits 10 and 37)*

Mr. Eric Moore (Asian, male, Catholic, no disabilities, and no prior EEO activity), GS-1101-13, Enforcement Analyst, Enforcement Center, Office of General Counsel, Chicago, Illinois, and a coworker, stated he witnessed this incident. He said that you began to cough continuously and he held you to prevent you from falling. He stated that paramedics were called and Mr. Pollock offered to hold your hand, but you told him to "leave me alone." He said that he left to get the paramedic, and when he returned you were on the floor. *(ROI Exhibit 14)*

Ms. Suiter said that she heard you tell Mr. Pollock something to the effect of "leave me alone" or "get away from me" while Mr. Pollock was attempting to assist you. She said that after that comment, she heard a loud crash to the floor. *(ROI Exhibit 15)*

Ms. Kathleen DiModica (White, female, Catholic, no disability, no EEO activity), GS-0303-07, Enforcement Assistant, Enforcement Center, Office of General Counsel, Chicago, Illinois, and a coworker, stated that she called the building's nurse, who arrived in 4 minutes. She said that this incident happened in front of her cubicle. She maintained that the entire incident lasted about one-half hour. *(ROI Exhibits 18 and 37)*

**Having your laptop computer taken away**

You alleged that management took your laptop computer from you and locked you out of the computer system. *(ROI Exhibit 8)*

Mr. Gustin testified that he did not take your computer from you. He maintained that you were in possession of your computer until you retired. By e-mail dated April 16, 2004, he asked that your password be reset and indicated that he would retrieve your laptop when you reported back to work. In a memorandum dated April 26, 2004, to Yvonne Hannah, President of AFGE

5

Chicago, he explained that he replaced your laptop with a desktop computer because you do not perform work offsite and do not telecommute. He said that he was concerned that you were trying to retrieve documents related to personal matters. *(ROI Exhibits 9 and 38, p 6)*

Mr. Pollock also testified that he did not take your laptop. *(ROI Exhibits 10 and 33, pp 22 and 23)* He stated that the day that you fell, March 16, 2004, you returned to the office about 6 p.m. The next day he noticed that your laptop was not in your cubicle. He said that since you did not return to duty, management was concerned that you were using the laptop for non-HUD related business, and that Mr. Gustin requested that your access be suspended until further notice. According to Mr. Pollock, you did not return to duty from the day you fell, March 16, 2004, until the day of your retirement, May 1, 2004. *(ROI Exhibit 10)*

**Not being allowed to work at home and denied leave without pay as reasonable accommodation**

You have also alleged that you were not allowed to telecommute and that you were denied leave without pay as a reasonable accommodation of your disability. You testified that when you suffer an anxiety attack, it triggers your asthma. You state that this leaves you in a condition where you cannot function at work or otherwise. You stated that Sandra Suiter and Kathleen DiModica, both White females, were permitted to telecommute. You also alleged that individuals of religion different from yours, Joan Kiening (Catholic), Cheryl Martin (no data provided), and Steve Wild (Protestant), were permitted to telecommute. *(ROI Exhibit 8)*

Mr. Pollock denied knowing that you had a disability, and he did not regard you as being disabled. *(ROI Exhibit 10)* He also testified that Mr. Wild was provided an accommodation. He said Mr. Wild requested the privilege to telecommute through the agency's telecommuting program. He further stated that he did not supervise Joan Kiening, and had no knowledge of whether or not she telecommuted. Mr. Pollock also testified that he was aware of your religion, and that he did not discriminate against you because of your religion. All of the individuals that you identified as comparators are Christians. Ms. Sandra Suiter *(ROI Exhibit 15)* stated that Mr. Walter Mozdzierz, her former supervisor, had approved her participation in the agency's telecommute program. She said that she was also in the program under Mr. Pollock but is no longer in it. She testified that she followed the agency's procedures to get into the program. Mr. John Bruce, (White, male, Catholic, no disability, no prior EEO activity), GS-1160-13, Financial Analyst *(ROI Exhibit 16)*, and Joan Keineig (White, female, Catholic, no disability, no prior EEO activity) *(ROI Exhibit 20)*, Office of General Counsel, Chicago Satellite Office, both coworkers of yours at the time of the instant complaint, state that they requested permission to telecommute through the agency's telecommuting policy. Mr. Wild *(ROI Exhibit 19)* testified that he participates in the agency's telecommute program, but he has had perfect attendance–no unexcused absences.

Mr. Gustin stated that he was aware of your religion. He said that he was aware that you received infrequent medical treatment for asthma or an asthma-type condition from medical statements that you provided to support leave requests; however, those statements did not recite any disability, restriction, or need for an accommodation. He said that you never stated that you

6

had a disability, restriction, or needed any health-related accommodation, despite his inquiry. He testified that you did not request permission to work at home, informally or in accordance with the Department's policy for telecommuting. *(ROI Exhibit 9)*

Mr. Pollock stated that he also was aware of your religion and he agreed with Mr. Gustin, stating that he had no knowledge that you ever requested telecommuting through the appropriate Departmental procedures. *(ROI Exhibit 10)*

The record contains an October 5, 1998, note from the Sykes Center: Advocate Health Center addressed to "Whom It May Concern," which states that you suffer from moderately severe bronchial asthma. The note says that "it is important that her work environment be kept free of . . . precipitating factors." An Adult Psychiatric Evaluation written by the Community Mental Health Council, INC., of Chicago, IL, stated you exhibited signs of "major anxiety" brought on by years of harassment at work. The evaluation also stated that you experienced some signs of paranoia because you felt that your supervisor was messing with your computer, and felt that you were being followed to the bathroom. *(ROI Exhibit 26, pp 3 and 5)*

There is also a note from the Sykes Center, dated August 24, 2004, stating that you suffer from severe asthma and allergic rhinitis. The note says that you must have water service continued without interruption. *(ROI Exhibit 26, p 11)* On an Initial Disability Claim Form from the Financial American Life Insurance Company dated May 17, 2004, Doctor Joyce Miller gave a diagnosis of major depression with psychiatric features, and asthma. She said that in order for you to return to work, you needed to reduce your anxiety and paranoia. It also described you as severely impaired in your interpersonal skills. The doctor stated that you could not perform the responsibilities of your job even if you were in a less stressful or demanding occupation. *(ROI Exhibit 26, pp 40 and 41)* There is nothing in the record to substantiate your allegation that you requested to work from home, and none of the documentation in the record indicates that you needed to work at home as an accommodation for any medical disability.

On October 23, 2003, you requested Short Term Reasonable Accommodation citing five reasons, one of which was related to your asthmatic condition, the other four related to your legal matters. *(ROI Exhibit 29, pp 7 and 8)*

With respect to your claim of denial of LWOP as a reasonable accommodation, Mr. Gustin said that LWOP requests were evaluated on a case-by-case basis. He said that you were denied LWOP because of your leave abuse. *(ROI Exhibit 9)* Mr. Gustin responded to you via a memorandum dated November 6, 2003, in which he asked for a more detailed leave request. There is no record of your response to his request. *(ROI Exhibit 29, p 9)*

You allege that Mr. Bruce had been granted leave without pay, and you had not. Mr. Bruce testified that over a 4-year period (2000-2003) he had been granted approximately 82 hours of leave without pay. *(ROI Exhibit 16, p 7)* The record clearly shows that you were granted more than 251 hours of leave without pay during that same 4-year period, and over 131 hours of leave without pay from January 2003 to March 2004. *(ROI Exhibit 34, pp 19-22)*

7

Mr. Pollock testified that he had no involvement in the denial of your request for LWOP. *(ROI Exhibit 10)*

### Being forced to retire effective May 1, 2004, because of harassment

Mr. Gustin denied that he forced you to retire. He testified that he expected you to return to the office, and that is why he went to the trouble of getting you a desktop computer. However, he stated that on several occasions, you regularly claimed you were going to retire and that you intended to fly to Washington, DC, to request a special retirement package from the Secretary of HUD personally. *(ROI Exhibit 9)*

Mr. Pollock denies harassing you. He testified that you retired of your own volition and he had no knowledge of you being harassed by coworkers or management. *(ROI Exhibit 10)*.

### Locked out of the HUD building

You maintained that in reprisal for having filed an EEO complaint, Mr. Pollock had you barred from entry into the HUD building on 77 West Jackson Street in Chicago, Illinois. *(ROI Exhibit 8)*

Mr. Pollock testified that he became aware in November 2004, after your retirement, that your former coworkers were complaining to Mr. Edward Hinsberger, Director of the Multifamily Housing Hub in Chicago, Illinois, that you had been requesting privileged file documents and/or information contained in HUD Multifamily files. He further testified that in early February 2005, he personally saw you in the HUD offices, and since you were no longer a HUD employee, he referred the issue to the Human Resources (HR) personnel to handle. Pursuant to HUD's Privacy Act Handbook 1325.1, Departmental records must be safeguarded against unauthorized access. Since you no longer had authorized access, Mr. Pollock issued you a letter on February 9, 2005, advising you that your access to the HUD offices would be limited. He said that he took this action because you contacted HUD employees and attempted to obtain confidential documents. *(ROI Exhibit 10)*

Mr. Edward Hinsberger (prior EEO activity), Director, Multifamily Hub Chicago, Illinois, provided the following testimony: On or about November 19, 2004, two employees approached him and stated that you were asking them, as a former employee, to provide you with information about a very sensitive, high profile case with which Mr. Hinsberger had been involved. He stated that these requests are normally handled through the Freedom of Information Act process, but you were trying to circumvent the process. He stated that he merely provided the information to the Office of the Inspector General, and did not request they investigate the matter. *(ROI Exhibit 24)*

Mr. Lashun Perry, Program Assistant, Multifamily Hub, Chicago, Illinois, and a colleague of yours, testified that you had requested the subject documents around November 19, 2004, and that he reported the incident to his supervisor. *(ROI Exhibit 25)*

8

Ms. Kathryn Brantley (no data provided), Director Administrative Service Center 1, Multifamily Hub, Chicago, Illinois, stated she told Mr. Pollock that he could not prohibit you from entering a public building, but she told him he could limit your access to individual spaces. She recalled one former employee who was required to make appointments before visiting HUD offices. She stated that only HUD employees have free access to HUD space. She testified that Mr. Pollock did not prohibit you from the building, but merely limited your access to HUD space. *(ROI Exhibit 22)*

Ms. Beverly E. Bishop (no prior EEO activity), Region V Deputy Regional Director, Chicago, Illinois, stated that Mr. Pollock was concerned that you were coming to the work area requesting confidential documents related to HUD projects. She said that Labor Relations advised Mr. Pollock to prepare a letter advising you that any visits to Enforcement Offices required prior approval. She stated that she concurred with this advice. *(ROI Exhibit 21)*

Ms. Izella Harvey (prior EEO activity) acknowledged discussing with Mr. Pollock your coming "in his department disturbing employees and requesting to be provided with information and documents." She testified that she advised him to prepare a letter restricting your access to the building and to give you an explanation for the restriction, because you were no longer a HUD employee. She maintained that free access to HUD space is not allowed for any former employee. *(ROI Exhibit 23)*

### Legal Analysis

Your complaint alleged that you were subjected to various acts of harassment and forced to retire because of your race (Black), sex (female), religion (Christian), disability (asthma and anxiety), and reprisal for prior EEO activity. In your affidavit, you testified that the following incidents occurred before Mr. Gustin and Mr. Pollock became aware of your prior EEO activity: (1) not being allowed to work at home; (2) denial of leave without pay as reasonable accommodation; (3) being placed on leave restriction in March 2004; (4) being placed on absent without leave and questioned about other time and attendance matters; (5) being overly supervised by being followed to the bathroom, and watched over while working at your desk; (6) being instructed to submit a leave slip for time taken to address a family emergency; and (7) failure to secure immediate medical attention, which occurred on March 16, 2004. In addition, you are alleging reprisal for the following: having your laptop computer taken away, being forced to retire, and being denied access to the HUD building. *(ROI Exhibit 8)*

**Disparate Treatment**

A claim of disparate treatment based on indirect evidence is examined under the three-part analysis first enunciated by the U.S. Supreme Court in McDonnell Douglas v. Green, 411 U.S. 792 (1973). For a complainant to prevail, s/he must first establish a *prima facie* case of discrimination by presenting facts that, if unexplained, reasonably give rise to an inference of discrimination, i.e., that a prohibited consideration was a factor in the adverse employment action. McDonnell Douglas, 411 U.S. at 802. The burden then shifts to the agency to articulate a legitimate, nondiscriminatory reason for its actions. Texas Department of Community Affairs

9

v. Burdine, 450 U. S. 248, 253 (1981). Once the agency has met its burden, the complainant bears the ultimate burden of persuading the fact finder by a preponderance of the evidence that the agency acted on the basis of a prohibited reason. St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993).

To establish a *prima facie* case of discrimination based on race, sex, religion, and disability, you must demonstrate that a similarly situated employee not in your protected classes was treated more favorably. Hamilton v. Department of the Navy, EEOC Appeal No. 01971517 (May 3, 1999). In order for comparative employees to be considered similarly situated, all relevant aspects of your situation must be nearly identical to those of the comparative employees. Tolar v. United States Postal Service, EEOC Appeal No. 01965083 (December 16, 1998).

With regard to your being asked to provide leave slips, you did not name comparative employees who were similarly situated to you *(ROI Exhibits 8 and 11)*, nor does the record show that there were comparative employees who were similarly situated to you who received more favorable treatment.

You named a comparator with respect to your claim of discrimination for being placed on leave restriction *(ROI Exhibit 11)*; however, the record demonstrates a pattern of leave abuse on your part. The records show that you took leave without prior approval, while your comparator's leave was approved. *(ROI Exhibit 34)* You did not name any similarly situated employees of a different protected class that received more favorable treatment in being charged with AWOL.

You stated that you were overly supervised and questioned about your participation in the SNAP program. *(ROI Exhibit 8)* You have not identified any employees from another protected class that received more favorable treatment in the way that management administered their leave.

Your claim that you were allowed to stay collapsed on the floor for 45 minutes before management got medical assistance for you is not supported by the record. All of the eyewitnesses to the event stated that medical assistance arrived and began treatment of you within 4 to 15 minutes of your fall, and that you told Mr. Pollack to stay away from you. *(ROI Exhibits 14, 15, 18, and 37)*

You alleged that your laptop computer was taken from you and you were locked out of the computer system. *(ROI Exhibit 8)* The record demonstrates that management did not take your laptop computer, but you retained possession of it until your resignation. *(ROI Exhibits 10, 33, and 38)* You did not name any similarly situated employee who was at home in a non-work status who was permitted access to the agency's computer system. Therefore, the Department finds that you have failed to establish a *prima facie* case of disparate treatment discrimination on the bases of race, sex, or religion.

10

**Harassment**

In a harassment case, the complainant may prevail if s/he can show that the actions complained of would not have occurred but for the employee's race, color, sex, national origin, age, disability, religion, or reprisal. See Roberts v. Department of Transportation, EEOC Appeal No. 01970727 (September 15, 2000). The harassment must be patterned or pervasive, See Wibstad v. United States Postal Service, EEOC Appeal No. 01972699 (August 14, 1998). A single, isolated incident will not be regarded as discriminatory harassment unless the conduct is severe. Whether the harassment is sufficiently severe to trigger a violation of Title VII or the Rehabilitation Act is determined by evaluating the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. See Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993); See also Roberts, supra, EEOC Appeal No. 01970727 (September 15, 2000). The issue is whether management's actions were pervasive and interfered with your work performance. While it may be reasonable to conclude that the actions you complained of were pervasive, there is no evidence that the actions interfered with you in the performance of your duties. Therefore, you have failed to establish by preponderance of the evidence that discriminatory harassment occurred. Hicks v. Department of the Treasury, EEOC Appeal No. 01A20939 (June 25, 2002).

Assuming, *arguendo*, that you established a *prima facie* case of discrimination based on race, sex, and religion, the burden shifts to the agency to articulate legitimate, nondiscriminatory reasons for its actions. With regard to your allegation that you were asked for a leave slip to cover time you used to address a family emergency, management testified that you were asked for the leave slip because of your prior leave abuse and because you did not tell them that you were using time to address a family emergency. *(ROI Exhibit 10)* The record supports management's claim that they placed you on leave restriction because of your excessive use of leave. *(ROI Exhibits 10 and 34)* The record shows that you were placed on AWOL because you failed to provide a leave slip to cover the time you were away from your desk and did not provide an explanation for your absence from your desk as requested. *(ROI Exhibits 9 and 10)* Management denies overly supervising you, *(ROI Exhibits 9 and 10)*, and there is no evidence in the record to support your contention that you were overly supervised or followed to the bathroom.

Management and the witnesses that observed the incident in which you collapsed on the floor all testified that you were provided with medical assistance within a few minutes of your collapse and not 45 minutes as you allege. *(ROI Exhibits 14, 15, 18, and 37)* The record also shows that your laptop computer was not taken away from you. *(ROI Exhibits 10, 33, and 38)* The record shows that your password was cancelled to prevent your access to confidential agency records, which you sought to obtain. *(ROI Exhibits 9 and 38)* The record of evidence demonstrates that you did not have a disability that required you to telecommute as an accommodation. Moreover, when management requested that you provide supporting documentation that it needed to grant you a reasonable accommodation, you did not provide the documentation. *(ROI Exhibits 10, 26, and 38)* The record also shows that you were granted substantially more hours of LWOP than the comparator whom you identified. *(ROI Exhibits 16*

11

*and 34)* Management's reason for denying you LWOP was your record of leave abuse. *(ROI Exhibits 9, 34, and 35)*

Management provided a nondiscriminatory reason for its actions; therefore, the burden shifts to you to prove by preponderance of the evidence that management's proffered reasons were pretextual. Since you have not offered any evidence that management's decisions were a pretext for discrimination, you have failed to establish that you were subjected to unlawful employment discrimination on the basis of race, sex, religion, or disability.

**Disability Discrimination**

To establish a disability claim, you must show that: (1) you are an individual with a disability as defined in 29 CFR § 1614.203(a)(1); (2) you are a "qualified" individual with a disability as defined in 29 CFR §1614.203 (a)(6); and (3) the agency took an adverse action against you because of your disability. Kalkofen v. United States Postal Service, EEOC Appeal No. 01965344 (January 20, 1999). To be qualified, you must be able to perform the essential functions of your job. Saul v. United States Postal Service, EEOC Appeal No. 01970693 (May 10, 2001). In addition, you must make a plausible showing that there is a causal relationship between your disabling condition and the alleged misconduct of the agency, *i.e.*, that the agency's action was based on your disability. Kalkofen, supra, EEOC Appeal No. 01965344 (January 20, 1999).

**Reasonable Accommodation**

You also alleged that you were denied a reasonable accommodation when you were not allowed to work at home. There is no evidence that you made a formal request to participate in the agency's telecommute program as a reasonable accommodation. Management cannot be held liable for denying you a reasonable accommodation without your first demonstrating a need for an accommodation. Mayo v. United States Postal Service, EEOC Appeal No. 01A41584 (May 27, 2005). Further, all of the individuals that you identified as comparators had requested to participate in the agency's telecommute program. *(ROI Exhibits 14, 16, 19, and 20)* You have failed to make a plausible showing that there is a causal relationship between your disabling condition and the alleged misconduct of the agency, *i.e.*, that the agency's action was based on your disability. Kalkofen, supra, EEOC Appeal No. 01965344 (January 20, 1999).

In regard to your request for LWOP, the record shows that management asked for more detailed information from you to justify your need for LWOP. *(ROI Exhibits 9 and 10)* That information was not provided. Further, your doctor stated that you could not perform the essential functions of your position during your periods of asthma/anxiety. *(ROI Exhibit 26)* To be covered by the Rehabilitation Act of 1973, as amended by the Americans with Disabilities Act, as amended, one must be able to perform the essential functions of his/her position. Nance v. United States Postal Service, EEOC Appeal No. 01981791 (March 3, 1999). Consequently, the Department finds that you were not unlawfully denied a reasonable accommodation. See Mayo, supra, EEOC Appeal No. 01A41584 (May 27, 2005).

Finally, the individual to whom you compare yourself, with respect to being denied LWOP, was not similarly situated to you. The record shows that individual had only received 82 hours of LWOP in a 4-year period, while you had received over 131 LWOP hours in a year. Further, there is no evidence that the comparator was given LWOP as an accommodation for a disability. The Department also finds that you failed to establish a *prima facie* case of disability discrimination. Kalkofen, supra, EEOC Appeal No. 01965344 (January 20, 1999).

**Constructive Discharge**

You alleged that management's actions were the reasons behind your resignation, which you state was a constructive discharge. *(ROI Exhibit 8)* The central question in a constructive discharge case is whether the employer, through its unlawful discriminatory behavior, made the employee's working conditions so intolerable that any reasonable person in the employee's situation would feel compelled to resign. The EEOC has established three elements which a complainant must prove to substantiate a claim of constructive discharge: (1) a reasonable person in the complainant's position would have found the working conditions intolerable; (2) conduct that constituted discrimination against the complainant created the intolerable working conditions; and (3) the complainant's involuntary resignation resulted from the intolerable working conditions. O'Kelley v. Department of the Army, EEOC Appeal No. 01985429 (August 14, 2001). Your claim of constructive discharge fails because you have not established that the actions that you claim led to your "forced" retirement constituted discriminatory conduct, as required by the second element of the constructive discharge test.

**Reprisal**

To establish a *prima facie* case of reprisal discrimination, you must present facts that, if unexplained, reasonably give rise to an inference of discrimination. You must show that: (1) you engaged in a protected activity; (2) an adverse action was taken against you; (3) the employer was aware of your protected activity; and (4) a nexus exists between the protected activity and the adverse action. Nexus can be shown by evidence that the adverse action followed the protected activity within such a period of time and in such a manner that a retaliatory motive is inferred. Generally, the Commission has held that nexus can be established if events occurred within 1 year of each other. Brick v. Federal Communications Commission, EEOC Appeal No. 01991870 (August 16, 2001).

The record demonstrated that you engaged in protected EEO activity, that management was aware of your involvement in that activity, that an adverse action (restricted access to the building) was taken against you, and that this action occurred within a short time of the protected activity. *(ROI Exhibits 9 and 10)* Management provided nondiscriminatory reasons for its actions, namely that non-employee access to the building is restricted, they were concerned about your attempt to access confidential information, and your presence was disruptive. *(ROI Exhibits 10, 21, 22, and 23)* Having met its burden of producing a nondiscriminatory reason for its actions, under the McDonnell Douglas framework, you have the ultimate burden of persuasion by showing management's proffered reason for its actions was a pretext for discrimination. McDonnell Douglas, supra, 411 U.S. 802 (1973). Since you have not proffered

13

any evidence that management's decisions were a pretext for discrimination, you have failed to establish reprisal discrimination, as alleged.

### Statement of Conclusion

The Department finds that you are a member of statutorily protected groups by virtue of your race, sex, religion, and your participation in a protected activity. The Department further finds that you are not a qualified person with a disability in that you: (a) do not have a known physical or mental impairment which substantially limits one or more of your major life activities, and (b) have no record of such impairment, nor are you regarded by the Department as having such an impairment. You also claim you were harassed on numerous occasions; however, the record clearly establishes that management's actions were justified acts designed to correct unauthorized absenteeism. You also establish that certain actions occurred, some of which you claim prompted you to elect to retire. Management officials Mr. Gregory Gustin and Mr. James Pollock articulated the Department's legitimate, nondiscriminatory reasons for the disputed actions. They explained that your race, sex, religion, and prior EEO activity had absolutely no consideration in actions on which this complaint is based. You did not prove that the reasons offered by these management officials for their actions were pretextual.

In reviewing your claims, the record evidence, the laws prohibiting discrimination as defined in Title VII of the Civil Rights Act of 1964, as amended; and analyzing these claims based on the allocation of the burden and order of proof as set forth by the Supreme Court in McDonnell Douglas, supra, 411 U.S. 792 (1973), the Department finds that you failed to establish a *prima facie* case of harassment and disparate treatment on the bases of race, sex, religion and disability, and having failed to show that management's articulated nondiscriminatory reason for restricting your access to the building was a pretext for discrimination, it is therefore determined that you were not discriminated against because of your race (Black), sex (female), religion (Christian) disability (asthma/anxiety), or reprisal as you claim.

### Statement of Relief

You have not prevailed on your claim of discrimination; therefore, no relief is awarded.

### Statement of Rights

You may appeal this Decision pursuant to 29 CFR § 1614.302 (d)(3), to the Merit Systems Protection Board (**not the Equal Employment Opportunity Commission**) within thirty (30) calendar days of receipt of this decision.

*Or*, pursuant to 29 CFR 1614.310(a), you have the right to file a civil action in an appropriate United States District Court within thirty (30) calendar days of receipt of this decision. If you file a civil action, you must name the Secretary of the U.S. Department of Housing and Urban Development, currently Alphonso Jackson, as the defendant. Failure to do so may result in the loss of any judicial redress to which you may be entitled.

An appeal form for the Merit Systems Protection Board and a listing of the MSPB's Regional and Field Offices, with areas of jurisdiction, are enclosed.

Sincerely,

*John W. Burden*

John W. Burden, Acting Deputy Director of
Equal Employment Opportunity

Enclosures:
MSPB Appeal Form and Rights
MSPB Regional and Field Offices

cc:
Keith E. Gottfried/C
Vivian R. England/CHP