FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUL 1 0 2008
Jul 10, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

FREDDIE C. BATCHELOR           )
                              )
            Plaintiff,        )
                              )
      v.                      )          No. 08 C 1658
                              )
UNITED STATES DEPARTMENT      )
OF HOUSING & URBAN            )          Judge Kennelly
DEVELOPMENT SECRETARY,        )
ALFONZO JACKSON               )
                              )
            Defendant,        )
                              )

## PLAINTIFF'S RESPONSE
## TO
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Freddie C. Batchelor, opposes Defendant's Motion for Summary

Judgment pursuant to Fed. R. Civ. P. 56 and, in opposition, states as follows:

**Introduction:**

Plaintiff's pro se complaint filed in the Federal District Court on March 21, 2008

and received by Defendant on April 14, 2008 contained numerous allegations against

HUD for which relief was being requested. They included:

- Prohibited personnel practices

- Violations of civil service laws

- Harassment

- Claims for workman's compensation

- Complaints filed under Federal Whistleblower statutes

- Obstruction of justice and destruction of agency records

The Plaintiff's allegations in the Complaint regarding the discriminatory treatment directed against herself and other employees in the HUD Departmental Enforcement Center who had formerly worked at the HUD Division of Public Housing was the only allegation of discrimination in what the Government characterizes as a "34 page pro se complaint."

Nonetheless, the Defendant's Motion for Summary Judgment was directed exclusively to what it described as allegations of discrimination against Plaintiff in February, March and April of 2004.

In fairness to the government, the 34 page pro se complaint was a mixture of factual and legal allegations set out in the sort of imprecise legal structures that one often finds in pro se complaints.  Pro se plaintiffs without legal training simply state the harms they have suffered without the professional detail normally provided by lawyers to create the specific counts of legal causes of actions and the specific references to facts that would support the legal causes of action.

But it is very clear from the 34 page pro se complaint, however imprecise it might be, is that the Plaintiff was not complaining exclusively about an EEO type of discrimination.

**The Discrimination Count:**

1.    In her 34 page pro se complaint, the Plaintiff, Freddie C. Batchelor, was not merely raising EEO discrimination complaints against the actions of her HUD superiors, Gregory Gustin and James Pollock.

2

2.      Plaintiff agrees that EEO discrimination complaints required an effort to
informally resolve the matter and that contact with the EEO counselor must occur within
45 days of the discriminatory action or matter.

3.      Plaintiff accepts Defendant's representation that a final agency decision
was made on Plaintiff's discrimination claims in January of 2006, but states that she was
never informed of the agency's decision in writing, and not even informally informed
through the intervention of her lawyer until the fall of 2007.

4.      Plaintiff acted reasonably promptly in filing her various actions, including
her discrimination claim, in March of 2008.

5.      Plaintiff did not miss her filing deadline "by two years" and the summary
judgment requests on this mere technicality in the context of a quite comprehensive list of
grievances should be denied.

**The Other Counts in the Complaint:**

6.      The defendant's facts are irreverent and does not address basis on which
Plaintiff filed her complaint. In the first statement the plaintiff stated her complaint was
being submitted for prohibited personnel practices, violations of civil service laws and
other acts of Malfeasance nothing referred to complaint being filed because of
Discrimination. (Reference Page (1) of complaint)

7.      On page (1) plaintiff states that complaint was being filed because after
filing various reports of fraud, waste, mismanagement and abuse to HUD's Inspector
General and Office of Special Counsel the plaintiff, Ms Batchelor was drastically
harassed with malicious intent on a daily basis by HUD management staff. These actions
were regular and consistent for many years and began actually in 1992 proceeding all the

3

way until she took a constructive retirement in 2004 and after retirement; suffering

severely from personal injuries from the harassment and retaliation. On two separate

occasions the plaintiff, Ms. Batchelor took severely ill at work after an asthmatic attack

was prompted by high anxiety levels from constant harassment and retaliation from

management officials because of her whistleblower activities positions of not agreeing

with management officials when they desired her to agree with them on matters relating

to viability of properties in HUD's inventory and demolition. In addition to reporting

Fiscal waste as recently identified in the Chicago Tribune on Sunday June 6, 2008. The

Plaintiff worked with the Chicago Tribune reporters in identifying the tremendous fiscal

waste and mismanagement that accorded with the Chicago Housing Authority in that Ms.

Batchelor was directly involved with administrative review during the time periods most

actions of transformations occurred from 1990 – 1998. After that the origination of the

Departmental Enforcement Center and Community Builders program that was quickly

dismantled; but the Departmental Enforcement still exists still not functioning as intended

by congressional mandate. Many reorganizations over the past years from 1990 – 2004

has not worked but contributed too much waste, mismanagement and corruption.

(Reference Page 27, 29-34 of complaint)


8.      The only reference to Exhibit A is on page twenty-five (Reference page 25 of

complaint). Much misstatement of facts went forth during this particular investigation

(where Michael Nickols, Sr. was the contract EEO Investigator. Please note exhibit

entitled MEMO that states intention interruption and missing documents that were

concerns raised for investigation CH04-12). Management interfered and obstructed a

4

government investigation with malicious intent to impede and breach legal administrative due process for the plaintiff.   Destruction of public documents and employee records also occurred.  Many other HUD managers and employees played a part of a conspiracy as it relates to the plaintiff's forced constructive retirement not only Mr. Gustin and Mr. Pollock.  Because of the above actions violations occurred Under Title 18 Crimes and Criminal Procedure Chapter 47 Fraud and False Statements Sec 1001 (a) and (c) were

components that occurred during the two investigations the Office of Inspector General, Special Counsel and cases where claims were filed for Workers Compensation 1996 and 2004 in both instances plaintiff was harmed and injured by the traumatic injury received at work via actions by management staff. (Reference Pages 12, 21 and 24 of complaint).

9.      In disagreement with paragraph one (1) the pro se complaint submitted was not filed as discrimination charges. Upon review of initial cover sheet for court the case was filed as a Whistle Blower case (for reprisal actions before employee retired and after. Last act of reprisal and retaliation was in March, 2008 when plaintiff applied for employment and was bad mouthed by prior supervisors at HUD and again in January 22, 2007 when plaintiff took the stand and was a witness in the case of New Englewood vs. United States (HUD).

10.     Plaintiff was threatened in writing received from Office of General Counsel. The first count against defendant they violated not only the Whistle Blower Protection Act but, 31 U. S. C. Sec. 3730 (h) Quai Tim (b) under the

False Claims Act Whistleblower protections to the False Claims Act. The statue

of limitations for Sec. 3730 (h) claim is six (6) years. Claims are also being

made under; 18 USC, Sec 1031 Major Fraud Act of 1989 (there were

destruction of documents that plaintiff worked on and management

attempted to accuse plaintiff in removing documents.) Refer to Exhibit dated May 2,

2005 Re: Englewood Terrace v United States refers to pages 1 and 2.


11.    The documents were kept in various places throughout the HUD

office. When plaintiff, cleared all files were left on plaintiff desk as well as computer

systems returned.  Since; then plaintiff has discovered that admission of destruction on

files on computer as made by Mr. Gustin and other management staff at HUD in

Chicago. Some of these files were those for New Englewood Terrace vs. US Department

of Housing & Urban Development.


12.    In every instance where an investigation of agency proceeding took

place during the period of 1992 -2004 and moving forward HUD management staff has

attempted with malicious intent to obstruct the government investigations and agency

proceedings initially brought by the plaintiff re; fraud, mismanagement, abuse, unfair

merit principles and violations of civil service personnel practices during this period.

Claims also made in accordance with Violations of 18 USC Sec 1505 Penalties for

obstruction of government investigations and 45 USC Sec 60 Penalties for

obstruction of government agency proceedings.


13.    HUD violated additionally Title 5 USCS Chapter 23 Merit System

Principal 2301 (b) 9 and 2302 Prohibited personnel practices against reprisal

for the lawful disclosure of information which employee reasonably believe

evidences (a) a violation of law, (b) Mismanagement, a gross waste of funds, an

abuse of authority or a threat to public health or safety. This occurred when

Plaintiff requested at five different instances transfers from the

Departmental Enforcement Center was requested.  The plaintiff reported

that the creation of Enforcement Center was a fraud and it was not

accomplishing what it had been intended for; employees competitively placed

in position from the Office of Public Housing were treated very differently

than other employees. Plaintiff was one of the said employees and there were

three others. Other employees were told we could not be trusted, were

Incompetent because we participated heavily in union activities and took a

stand against unfair labor and personnel practices and so reported them to

the appropriate authority governing such unlawful activities.

(Reference pages 27- 34 in complaint)


14.    The plaintiff, Ms. Batchelor is a retired public service professional.

She began her career at the age of 13 working in a youth program under

CEDA. She began this career because she valued public service and believed

in true justice in all Departments of government. After graduating from

College, she took a position at HUD desiring to focus on governmental and

social issues. After working several years in government from 1978 up until

1996 Ms. Batchelor believed one could get a since of true justice if wronged

in the work place.

15.    The plaintiff felt it was the right thing to do to report fraud, waste, abuse and mismanagement as well as unfair personnel practices; she soon found out in 1996 that this was not the process at HUD. They deemed Whistleblowers as troublemakers and black balled them as well as harassed them to the point of illness because of work related stress of having to look behind your back everyday constantly.  HUD had an obligation to the plaintiff as an employee and the plaintiff had an obligation to the Government (HUD). The plaintiff, Ms. Batchelor keeps her obligation to the United States government (HUD) and carried out her responsibilities well. But the government did not carry out its responsibility and obligation to the plaintiff according to the Civil Service Reform Act of 1978.

16.    The plaintiff had and has a right to be free from reprisal after reporting acts of abuse of authority, gross mismanagement as well as being free to report unfair labor and personnel practices. In neither situation were the rights of the plaintiff protected under this public law and statue.  The United States government (HUD) violated the Civil Service Reform Act (P.L.95- 454, 92 Stat 111) HUD allowed management to maliciously harass the plaintiff after she reported various acts of mismanagement, abuse and fraud. The plaintiff in her original complaint lists various labor practices that the government violated with intent and was negligent in administering to ensure that Ms. Batchelor would not be harmed after reporting unlawful acts

of malfeasance. These actions began in 1992 throughout 2004 and thereafter

Constructive retirement. The government should have protected Ms.

Batchelor against a forced retirement due to her initial action of reporting

unlawful acts by management staff within HUD. These actions were

continuous actions of harassment that caused personal harm to the plaintiff.

HUD allowed a creation of a hostile work environment arising out of an

escalating series of retaliatory actions against a career employee, culminating

in leave restrictions, denial of reasonable accommodations due to illness both

of plaintiff and late spouse including whistleblowers activities.

17.     Paragraph number two (2) has nothing to do with the basis on which

plaintiff has brought this complaint. The plaintiff's case is a violation of

employee rights covered under the above laws and statues. After the plaintiff

took ill at work  and had a traumatic personal injury due to negligence and

malicious intent by management officials; plaintiff started an informal

process for violation of merit system protection practices that was never

completed. The document supplied by the defendant was one which the

plaintiff never had a chance to precede with due process due to the

negligence of the government HUD. Many documents and items

used for the investigation of facts from the plaintiff's informal initial

examination by the EEO unit which processes all administrative claims of

investigations launched by employees were false statements made by HUD

management. There was definitely a breach of due process by the

government HUD.

9

18.    The said decision was not completely completed by the investigation

because during the time period on investigation plaintiff was seriously still ill

and under doctors care both medical and psychologist . The plaintiff was not

released from doctors' care until December 31, 2005.

Therefore Ms. Batchelor was not doing much of anything under doctor's

advice; because of the traumatic injury received in March, 2004 while at

work; the plaintiff developed high degrees of depression, anxiety as well as

her asthmatic conditions was made worse. The plaintiff was not given

clearance to do any type of work until January, 2006. Exhibit A submitted by

defendant was never received by the plaintiff. Request have been made for a

copy of the green receipt card and it has not been supplied by defendant as of

yet. The postal service has record of plaintiff never receiving said document

and signing for it as evidenced by mail carrier. Supplied as an exhibit is

proof that HUD could not have mailed the document to said address 9615 S

Kedzie because as of June, 2005 house had been demolished. Also, said sale

of house proof that in the month of May, 2005 the plaintiff notified HUD of

forwarding address. They forwarded report of investigation stamped with

April 18, 2005 date received by plaintiff in May, 2005 at 2710 East 77th

Street Chicago, IL 60649.  In January, 2006 plaintiff no longer lived at 9615

S Kedzie in Evergreen Park there was no house there at this time because the

buyer of the property had demolished the structure and this address no

longer existed. A malicious intent to stop due process of investigation

occurred with this action by the government. An intentional mistake in putting an incorrect address was made by the government HUD.

19. The government had knowledge of forwarding address because they made sure that the plaintiff received the investigative report at her forwarding address 2710 East 77th Street Chicago, Illinois. In addition the plaintiff spouse died in June, 2004, which also devastated her because HUD management staff spread throughout HUD Ms. Batchelor was lying about the severity of her husband's illness and refused her FMLA at a critical time of his illness with only a few months to live. Management attempted to put the plaintiff on leave restriction in March, 2004 her husband died June 6, 2004. All of this occurred after plaintiff reported unlawful activities by HUD management in multifamily housing, public housing and the departmental enforcement center. The defendant's statement is incorrect the plaintiff did not wait for two years. The government (HUD) due to it's negligence did not ensure as they should have that the plaintiff received the final decision timely and make sure it went to the correct address as they did with the investigative reports. This action was maliciously done with intent to negate due process so that Ms.Batchelor could not appeal the government (HUD's decision).

20. Therefore, because of the negligence of the government (HUD) and their mistake, the plaintiff had no knowledge of said document until March, 2006 when she began working with an Attorney by the name of Scott V.

Kelly office location then was on Michigan Ave. At this time HUD still did

not indicate to Attorney Kelly that this document had been issued. The only

thing they discussed was issues of the Workers Compensation which process

was impeded by malicious acts of management too. Many calls were made to

the HUD office in Washington DC but they ignored the plaintiff request and

she never received a return call. It was not until September, 2007 after

paying an Attorney Rose Joshua borrowed money to get a copy of the

decision did the plaintiff have it in her hand and began to locate legal counsel for

assistance.

21.    The plaintiff first time of seeing this decision in it's form was

September, 2007. The request also was made for a copy of the green

signature receipt card but it was not provided by the government (HUD).

Therefore; paragraph four (4) is not correct and plaintiff did not miss her

deadline and wait for two years. Her first knowledge of the decision was in

September, 2007. Due to the government's negligence and sending

information to the wrong address intentional HUD is responsible even in this

for a Breach of Due Process. The plaintiff was not afforded her due process

in the investigation nor in the government being responsible for timely and

correctly sending the Final decision to the correct address having they had

knowledge of the new mailing address because they forwarded the

Investigative Reports to the plaintiff's in 2005 and knew the plaintiff was

awaiting the final decision so that she could file an action in court. This was

not the first occurrence of the Breach of due process by HUD it occurred

12

many times through the time period of 1992 – 2004 moving forward. Their

consistent practice is to delay receipt by plaintiff of decisions or reports in

hope that no legal action is filed and time lapse. Although, the plaintiff has

explained it still exist that the plaintiff case is not one on the basis of

discrimination.

   The following counts and grounds of violations  is the basis of the plaintiff's

complaint:

   a)  Under Title 18 Crimes and Criminal Procedure Chapter 47 Fraud and

   False Statements Sec 1001 (a) and (c) as it pertains to the false statements

   maliciously made by management and conspiracy and fraud conducted to attempt

   to conceal records and documents pertaining to Investigations, eligible claims

   filed Workers Compensation and other damaging remarks that harmed  plaintiff.

   b)  Whistle Blower Protection Act

   c)  31 U. S. C. Sec. 3730 (h) Quai Tim (b) under the False Claims Act

   Whistleblower protections to the False Claims Act Abuse of authority and

mismanagement by HUD in the case of New Englewood Terrace vs. HUD,

flaging and treatment of owner John Hayes that was not appropriate, forced to

back out of his ownership of New Englewood Terrace afte working diligently

and infusing almost 1 million dollars into property. Residents suffered and

large amounts and money and time was spent for three years that management

attempted to say was pretentious and made no difference but it did and

improvement were made when management said there was none. They

13

documented as such and made themselves a false claim against New Englewood Terrace. This was just the first example of many. In addition demolition of housing projects were used to assist favorite developers gain even when there was no need for demoltion Thousands of dollars were wasted to rehabilitate then they demolished. (HUD allowed without following proper process.) The plaintif reported such activity and received acts of reprisal and retaliation.

d)    18 USC. Sec 1031 Major Fraud Act of 1989

Violations of 18 USC Sec 1505 Penalties for obstruction of government investigations

e)    45 USC Sec 60 Penalties for obstruction of government agency proceedings.

f)    Title 5 USCS Chapter 23 Merit System Principal 2301 (b) 9 and 2302 Prohibited personnel practices   (reprisal and harassment)

g)    United States government (HUD) violated the Civil Service Reform Act (P.L.95-454, 92 Stat 111) HUD allowed management to maliciously harass the plaintiff

Knowing all of the above with depositions and interrogatories of individuals involved with the documented proof and court request for certain records; the plaintiff can prove her case. All of these violations give legal questions to be answered on the grounds of government's intent to harm maliciously as well as breach of due process of law by the government. There remains a question also of good faith as it pertains to the government and the labor organization in rules made to protect the plaintiff from unfair treatment and harm.

14

The plaintiff will be submitting an amended complaint specifying all of the above violations with the facts and other regulations pertaining to the malicious unfair treatment the plaintiff received from 1992 through 2004 and after retirement..

Wherefore, the plaintiff prays that   Honorable Judge Kennelly will see fit that the summary judgment not be allowed and plaintiff be able to go on and prove the negligence of the government (HUD) in it's violations of the laws specified above and the plaintiff be able to receive her full day in court as well as full due process of law for the personal harm she has received both personal and financially just for reporting unlawful acts by HUD management, being a witness telling and standing for true facts and accounts that occurred in the case of New Englewood Terrace vs. United States (HUD), reporting waste and mismanagement in 1996, 2004 and presently.

Respectfully Submitted

Freddie C Batchelor
Plaintiff

Examples of Exhibits (Evidence Submitted to Court)

Attached are just a few factual pieces of evidence where the government (HUD) caused derogatory actions to occur to the plaintiff because of their harmful actions

1) Letter dated January 2, 1996 first incident of severe reprisal and retaliation that lead to personal, financial and physical harm (health) of plaintiff.

2) Letter dated, October 8th 1996 from plaintiff's doctor notifying government of how their actions harmed plaintiff after major asthmatic attack after excessive reprisal from government (management) personnel.

3) Copy of Transfer tax for plaintiff's home sale as of April 11, 2205 same time plaintiff notified HUD of forwarding address where investigative report forwarded to.

4) Proof there is no way government could have delivered said final decision to Ms. Batchelor January, 2006 because house was demolished June 20, 2005 proof supplied and address no longer existed, they were made aware of forwarding address April 11, 2005.

5) Letter dated May 2, 2005 where government accused Ms. Batchelor of taking files after she decided to testify in the case Englewood Terrace v United States same property Ms. Batchelor reported to IG that management had alleged a false claim against.

6) MEMO dated October 13, 2004 of interference and missing documents re: investigation completed in April 18, 2005 by Mr. Nickols also stating corrections to reports needed and additional information (Government overlooked and concluded a decision with an incomplete investigation pending.

   The plaintiff has many more documents to be able to prove her case.

January 2, 1996

AGENCY LIAISON
Individual Hardship Cases
The White House
Washington, DC

            P L E A S E      E X P E D I T E    A S A P
                  I N   N E E D   O F   Y O U R
                        H E   L  P

                  _____


Attention:    Agency Liaison White House Aide
              President Bill Clinton
              Vice-President Gore


          My name is Evangelist Freddie C. Batchelor I reside
in the City of Chicago, State of Illinois.  I am a member
also of the clergy for Lighthouse Apostolic Church where the
Pastor is the Rev. Daniel Willis of the Pentacostals of Chicago
(POC) and Pentacostals Assemblies of the World, Inc. as well as
a career Public Servant for 20 years.  I currently work with
the US Department of Housing & Urban Development located in
Chicago in the Office of Public Housing at 77 West Jackson,
employed as a Community Relations & Involvement Specialist.
I also founded my own community broadcast program that
empowers people to change for the better and LIVE!

          On June 4, 1996 I suffered a traumatic on the job injury
which resulted in severe personal injury to myself and family
which has left us in hardship financially, mentally and morally.
I was brutally attacked in the line of duty by my upper
management supervisor on May 22, 1996 in Decatur, Illinois
while a conference for Family/Self-Sufficiency was in progress.
I had worked along with another fellow employee Cynthia Cunigan
to put together this conference and work shop which invited
several other agency heads federal, state and local to
participate and discuss Welfare Reform Issues.  At this meeting
as I stated above I was attacked severely by management officials
of HUD.  They threatened my character, caused me severe anxiety
and depression.  The supervisor cursed me and defamed by
character and even made some comments negatively toward my
status as being a minister.

PAGE 2

This situation affected me so that I became terrible ill and considered even returning home before the workshop was over. I then contacted the main office back in Chicago and spoke with the Deputy Director and Director and indicated to them what had taken place and in front of a fellow co-worker. I was asked to stay at the conference so that the agency would not look bad and I did since I had invited all of the presenters on behalf of the agency. I was asked to wait until all parties involved could be present at the office for a meeting. I did do this and when I first requested a resolution meeting with the Director he had to cancel our meeting. Then I spoke with him and the Deputy Director privately and relayed all concerns. I also indicated to them at the time that I did not desire to meet with the supervisor whom had attacked me and my character.

This apparently did not matter to them because on June 4, 1996 I was called into a meeting without prior notification and enough time to secure a union representative into a room with (3) three management officials and just myself. In this meeting management officials attacked my character, my skills and badgered me mentally. After this meeting I was so upset that I began crying and could not stop it resulted in me having a severe asthma attack and making me develop a severe situational anxiety problem. I ended up passing out and co-workers calling paramedics to bring me back to consciousness. My entire body was flush and red. An EEO Counselor and Union Representative were present with me. The EEO Counselor asked where was the supervisor and Director? She even went down to the 24th floor where I worked and they could not be found after the incident occurred. They ran away! After, this the Director and others would not fill out any papers as to the validity of the incident. I was threatened by Director telling me that he was going to put me on AWOL etc...., while out sick.

This incident caused my breathening capacity to go down to 125 measured in expiration and inhalation. Prior to the incident I was not taking Presidone (cortisone) that is dangerous but after it's occurrence I had to take 40mgs per day. In addition, my condition became chronic and severe, I now have to bring a Pulmo Aide Compressor to work with me to take

Humana Health Care Plans
Weathers Y. Sykes Center
2545 S. Dr. Martin Luther King Drive
Chicago, Illinois
60616

10/8/96

To Whom It May Concern:

This is issued at the request of my patient, Freddie Batchelor.

**+Humana®**
**Health Care Plans**

a) Specific medical condition.

Ms. Batchelor has chronic asthma since childhood with infrequent attacks ( 2-3x/year) which promptly responds to treatment. She had a major attack at work beginning 06-04-96 after an altercation at work and has been difficult to stabilize since then until just last month. when she was able to return to partial duty. She also developed an anxiety disorder due to the above mentioned incident w/c is still being treated by mental health counselors.

b) Most recent clinical findings.

On 10/3/96 Ms. Batchelor was quite comfortable, had minimal wheezing and appeared stable. Future plans are to continue medications ( Prednisone, Albuterol, Aerobid, Theodur, Ventolin, Paxil, Trazodone), continued appts. c̄ allergy specialist, once a month appts c̄ me.

c) Estimated date of recovery

Pt resumed partial duty on 9-16-96. May return to full duty when the person(s) who caused

(over)

**VILLAGE OF EVERGREEN PARK - REAL ESTATE TRANSFER TAX**
**EFFECTIVE FEBRUARY 1, 1996**

[ ] **EXEMPTION**

st be filled out completely, signed by at least one of the sellers, and presented to the
Clerk, 9418 S. Kedzie Avenue, Evergreen Park, IL, 60805 at the time of purchase of
stamps. The stamps must be affixed to the deed before recording.

l amount of consideration of the transaction is the amount upon which the tax is to be
full actual consideration of the transaction and the amount of the tax stamps required
his declaration.

(3)    Tax stamps may not be issued unless all water, sewer and refuse charges have been paid in full and a
certificate of housing inspection has been issued for all residential housing property.

(4)    For additional information, please call the Village Clerk at 422-1551, Monday, 9:00 a.m. to 8:00 p.m.,
Tuesday thru Friday, 9:00 a.m. to 5:00 p.m., except Wednesdays and Saturdays, 9:00 a.m. to 12:00 noon.

Street Address of Property  *9615 S. KEDZIE*

Permanent Property Index No.  *24-12-100-077-0000.*

Full Actual Consideration (include amount of mortgage
and value of liabilities assumed)                           $ *250,000 00*

Amount of Tax ($5.00 per $1,000 or fraction thereof
of full actual consideration, minimum $100)                 $ *1,250.00.*

I hereby declare that this transaction is exempt from taxation under the Evergreen Park Real Estate Transfer Tax
Ordinance by paragraph(s) _____ of Section 18.54 (see reverse for exemptions).

Explanation of exemption claimed: _____

We hereby declare the full actual consideration and above facts contained in this declaration to be true and
correct.

Purchaser:  *FLORIDA PLASTICS.*

                                         Names (No signature required)

Seller:  *THEODORE & FREDDIE BATCHELOR, 2710 E. 77TH ST, CHICAGO, IL 60649.*
                Names                              Forwarding Address

Signature  _____        Date Signed  *4/11/05.*
                Seller or Agent

*WAIVED - THE INSPECTION / ZONING FEE — PER ED CLAHESSY —*
*SINCE IT WAS DONE 1/6/05.*

PAID
APR 11 2005

**Evergreen Park Fire Dept**
**9000 S. Kedzie AVE**
**Evergreen Park, IL 60805**


### Permit Certificate


**Date:** 07/01/2008

**Business Name:** 9615 S KEDZIE AVE / DEMOLITION

**Address:** 9615 S KEDZIE AVE
Evergreen Park, IL 60805

**Phone:**


**The following permit has been issued:**

**Permit No.** 014942

**Type:** BUILD/DEMO BUILDING / DEMOLITION

**Issued Date:** 06/13/2005
**Effective Date:** 06/13/2005
**Expiration Date:** 06/13/2006

**Notes:** Demo of building
gc - Bricks & Steel, Ltd.
Est. cost -$7000    -$500 bond    -1 required inspection

Permit No. 14942


It is the business's responsibility to ensure that conditions are in accordance with applicable State and Local fire regulations. Please contact Evergreen Park Fire Dept for more information.

_____

**Inspector:** Unknown Staff Member            **Date**

**Evergreen Park Building Department**
**9000 S. Kedzie AVE**
**Evergreen Park, IL 60805**

### INSPECTION NOTICE

Tue Jul 1, 2008

**9615 S KEDZIE AVE / DEMOLITION**
**9615 S KEDZIE AVE**
Evergreen Park, IL 60805

NEIL  VANDERMOLEN
9615 S KEDZIE AVE
Evergreen Park, IL 60805

An inspection of your facility on        Mon Jun 20, 2005        revealed the violations
listed below.

ORDER TO COMPLY: Since these conditions are contrary to an adopted village code or ordinance,
you must correct them upon receipt of this notice. A re-inspection to determine compliance
will be conducted on

If you fail to correct the violation(s) noted prior to the re-inspection date listed, you
may be subject to citation(s) and fine(s) provided for by ordinance for such violations.

---

Violation Code

---

0-0 ADD COMMENT ADDITIONAL COMMENTS
   FINAL BUILDING - DEMO - COMPLETE - OK

   OK TO RELEASE PERMIT BOND

---

LAMMEL, EDWIN
Inspector

X_____
  NEIL VANDERMOLEN
  Occupant/Owner



**U.S. Department of Justice**

Civil Division

PDK:PRWellons:
No. 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

Telephone: (202) 616-8532
Datafax:  (202) 307-0972

*Washington, D.C. 20530*

May 2, 2005

<u>VIA FED EX</u>

Peter V. Baugher
Shopf & Weiss LLP
312 West Randolph Street
Suite 300
Chicago, IL 60606-1721

Re:  <u>Englewood Terrace v. United States</u>

Dear Peter:

This letter is in response to your letters of April 19 and
26, 2005, as well as to additional outstanding discovery issues.
We address documents requested in your April 19, 2005 letter
below:

1.  DEC Files From 1998 - Englewood's original requests for
documents requested documents from 2000 to the present.
Regardless, I have enclosed documents reflecting the Department
of Enforcement's involvement with South Pointe for 1998.

Further, we previously produced all other discoverable DEC
documents in HUD's possession, custody, and control. This
includes the contents of all "green" files. It also includes all
documents regarding South Pointe that DEC staff imaged. In fact,
your continued insistence that you have not received "imaged"
documents fails to take into account that DEC's imaged documents
are, by definition, indistinguishable from the paper documents
from which images were taken.

RECEIVED

MAY 0 3 2005

PVB

-2-

Your statement that you have not received documents reflecting work undertaken by DEC Analyst Freddie Bachelor is particularly disturbing given Mr. Samuelson's testimony under oath that he has paid at least one former HUD employee who has assisted him in obtaining HUD documents from Ms. Bachelor outside the scope of discovery.

In fact, HUD has discovered that many records formerly in Ms. Bachelor's custody are missing and likely were wrongfully removed by her. We ask that Mr. Samuelson immediately return any original documents he obtained from Ms. Bachelor to HUD.

2.  May 31, 2001 Privilege Claim - A copy of this document is enclosed with redactions deleted.

3.  DEC Processing Protocols - The requested protocol was produced at Margie Maisonnett's deposition on April 29, 2005.

4.  REMS Change - At Ms. Maisonet's deposition on April 29, 2005, we produced the REMS instructions we believe Ms. Thomas referenced in her testimony.

Regardless, your client has filed a breach of contract action. Englewood's complaint contains no allegations that HUD's record keeping practices relate to any claimed breach of contract, and HUD's record keeping policies are not at issue in this dispute.

5.  Flags - We will produce copies of the requested "flags" after we redact them in compliance with the requirements of the Privacy Act or agree to an appropriate protective order.

-3-

6. **Referrals** - The requested dates can be found within the documents corresponding to the following Bates numbers:

> D0993
> D1110
> D1128
> D1145

7. **REMS Instructions** - Please refer to our response to request number 4.

8. **Concurrence Pages** - We have identified one concurrence page that has not been produced. We will produce this document shortly.

9. **New DEC and REAC Protocols** - Your request misstates Ms. Coleman's testimony. Regardless, please refer to our response to request number 4.

10. **Claim of Privilege** - As we have previously informed you, Gregory Gustin served as DEC Lead Enforcement Attorney for the Chicago Satellite Office in May 2002. Howard Mayfield served as Deputy Director of HUD's Office of Asset Management at that time. The requested documents are privileged attorney-client communications and are not subject to discovery. If you believe the documents are exempted from the privilege doctrine, please inform us of the basis for that position.

During Ms. Maisonet's deposition, you made oral requests for certain documents. Several of these documents already have been produced to you -- a situation that has occurred repeatedly during discovery. However, please inform us in writing of what documents you wish to receive so that we may evaluate and respond to your requests.

Finally, we enclose four photographs that we believe were inadvertently omitted from prior productions.

-4-

Please contact me with any questions or concerns at 202-616-8253.

Sincerely,

Paul R. Wellons
Trial Attorney
Commercial Litigation Branch
Civil Division

Exhibit #
#
10'

# MEMO

TO:            The Record

FROM:        Michael Nickols, Sr., Contract EEO Investigator

SUBJECT:   Concerns Raised During the Interview/Missing Documents

DATE:        October 13, 2004

This investigator had scheduled September 9, 2004, as the date for the interview of Gregory Gustin and James Pollock, responding management officials named by the Complainant, Freddie Batchelor. A white female accompanied Mr. Gustin to the interview and was simply introduced as Ofelia and that she worked with Mr. Gustin in the Office of General Counsel. Her last name, position title and reason for her presence remained unknown to this investigator until later.

This investigator presumed that Ofelia was representing Mr. Gustin as so often happens and that she understood her role was to only provide assistance to the affiant and not answer for the affiant; so the interview began. However, Ofelia constantly interrupted the interview and rephrased the questions being asked that this investigator culminated the interview and informed Mr. Gustin that the interview would be rescheduled.

Mr. Pollock entered the conference room for his interview. Ofelia remained and continued to interrupt and rephrase the questions in a controlling manner, same as she had done during Mr. Gustin's interview. This investigator ended Mr. Pollock's interview in the same manner as aforementioned.

This investigator asked Ofelia to stay because her behavior during his attempts to interview the responding management officials was disruptive, served as an impediment and was unacceptable. It was at this time this investigator learned that her name is Ofelia Frankel and she is an attorney in the Office of General Counsel, and that part of her responsibility in that role is to determine, for future representation, the merit of complaints filed against HUD.

Nevertheless, as a result of the abovementioned, both Mr. Gustin and Mr. Pollock were presented interrogatories to complete. However, this investigator did not receive the statements for several weeks after an extension was granted.

## Missing Documents

The record is silent regarding documents because the interviews were complete and that both the Complainant and the responding management officials had already provided ample documentation prior to receiving approval of the investigative plan which includes the documents to be requested.

EXHIBIT 47
PAGE 1 OF 12

HUD Case Number CH 04 12
Freddie Batchelor

### Corrections to Report of Investigation and Additional Information Needed

1. Add page numbers to the Summary Section of the Report of Investigation (ROI).

2. Provide the name, race, and the position title/series/grade of the employee in Exhibit 35 (stated to be a White male) who was requested to submit a leave slip for time away from his desk.

3. Identify others who had attendance problems or who were stated to have had attendance problems including Cheryl Martin and Sandra Suiter. Provide their race, disability, and prior EEO activity and whether any disciplinary action was taken against them because of attendance problems including being placed on leave restriction.

4. Obtain Complainant's prior EEO activity and the responsible management officials named in complaints filed. *(I will forward this information to you).*

### Documents Needed

1. Time and Attendance (Leave) Policy in effect during 2004, including any applicable collective bargaining agreement provisions.

2. Telework Program Policy in effect during 2004, including any applicable collective bargaining agreement provisions.

3. Reasonable Accommodation Policy in effect during 2004, including any applicable collective bargaining agreement provisions.

4. Shared Neutrals Program Policy effect during 2004, including any applicable collective bargaining agreement provisions.

47
6   /2